Filed 11/24/20 In re D.M. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
## SECOND APPELLATE DISTRICT
## DIVISION FOUR

| | |
|---|---|
| In re D.M., et al., Persons Coming Under the Juvenile Court Law. | B303088 (Los Angeles County Super. Ct. No. 19CCJP06202) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. M.M., et al., Defendants and Appellants. | |

APPEAL from orders of the Superior Court of Los Angeles County, Marguerite D. Downing, Judge. Affirmed.

Cristina Gabrielidis, under appointment by the Court of Appeal, for Defendant and Appellant M.M.

Maryann M. Goode, under appointment by the Court of Appeal, for Defendant and Appellant R.B.

Mary C. Wickham, County Counsel, Kim Nemoy, Acting Assistant County Counsel, Brian Mahler, Deputy County Counsel for Plaintiff and Respondent.

The juvenile court exercised dependency jurisdiction over half-brothers D.M. and H.B. under Welfare and Institutions Code section 300, subdivisions (b)(1), (d), and (j)[1] after finding they had been sexually abused by H.B.'s father R.B., and their mother M.M. had failed to protect them from the abuse. The court ordered the children placed with M.M. and H.B. removed from R.B.'s physical custody. The court also required R.B. to participate in sexual abuse counseling and his visitation to be supervised. R.B. and M.M. argue substantial evidence did not support the jurisdictional findings. R.B. further contends the removal order contained prejudicial errors and, alternatively, was not supported by substantial evidence. We conclude (1) the juvenile court's findings were supported by substantial evidence and (2) the removal order contained no errors and was supported by substantial evidence. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Department Files a Dependency Petition and the Juvenile Court Detains H.B. from R.B. and places the children with M.M.

In 2019, M.M. had two children —D.M. (born 2006) and H.B. (born 2010). R.B. is H.B.'s presumed father. D.M"'s father is deceased. M.M. and R.B no longer lived together. The children resided with M.M. H.B., sometimes accompanied by D.M, would visit R.B. at his home.

In early September 2019, the Department of Children and Family Services (the Department) received a referral that nine-

---

1    Statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

2

year-old H.B. may have been the victim of sexual abuse by R.B. During the ensuing investigation, the Department social worker interviewed family members and H.O., M.M.'s boyfriend.

On September 13, 2019, H.B. stated that for a year, R.B. had been grabbing H.B.'s penis over his pants during home visits. After grasping H.B.'s penis, R.B. asked, "[W]hose is this, yours or mine?" If H.B answered, "Mine," then R.B. pinched his penis "hard." H.B. would scream and try to stop his father from hurting him, although the child knew they were "playing." H.B. also said R.B. wanted him "to say different words and if I did not say the right [word, he would] squeeze [my genitals]." H.B. stated R.B. was always fully clothed.

Thirteen-year-old D.M. reported having experienced similar abuse. When he was seven or eight years old, R.B. would reach inside D.M.'s pants and squeeze his penis, "a quick grab, a few seconds maybe." D.M. thought R.B.'s behavior was "weird" and told M.M. According to D.M., M.M. "didn't really do anything about it.. . . she didn't tell the police . . . . They were boyfriend and girlfriend at the time, what was she going to do? I don't think she wanted to ruin the relationship."[2] D.M. believed R.B.'s behavior was "a game or something" and saw him "do it to H.B. too," during a visit at R.B.'s home two or three weeks earlier.

---

2     M.M. did report R.B.'s abuse of D.M. to the Department, but not until January 2016, when D.M. was nine years old. The allegations were ultimately deemed inconclusive and the case was closed. The Department referred the children for counseling and determined there "appeared to be no immediate concerns because the parents are no longer living in the same household." Thereafter, the Department received six additional referrals, none of which alleged sexual abuse. All of the referrals were determined to be either inconclusive or unfounded.

D.M. said R.B. "would make [them] say some weird words and if [they] didn't say what he wanted he would squeeze [their genitals] harder." D.M denied that R.B. had him touch his own penis or watch pornography. D.M. stopped visiting R.B.

R.B. denied the allegations of sexual abuse, saying he was only checking on H.B., who did not know how to clean himself. He explained his son "smells" and is embarrassed to talk about it. R.B. said he grabbed H.B.'s pants "from the middle" to check on him, because H.B. "poops" in his pants so R.B. looks for "stains or wetness." M.M. confirmed that H.B. defecates on himself and isolates himself. She also stated H.B. had difficulty talking about his father and would "shut down" when questioned about him.

For her part, M.M. was reluctant to meet with the social worker to discuss the sexual abuse allegations, to file a police report, or to go to court because of the demands of her job. In a telephone call on September 16, 2019, M.M. was upset with the social worker. She claimed to have already filed police reports of R.B.'s behavior, but "no one was doing anything about the allegations."

During a meeting on September 18, 2019, M.M. told the social worker she had attempted to file a police report and obtain a restraining order that day at the West San Fernando Valley Police Station, but the officer directed her to the Van Nuys Police Station. M.M. said she had no time to go to a different police station. When the social worker urged M.M. to follow through to ensure H.B.'s safety, M.M. became angry and yelled that she was doing her best. M.M. insisted she was unaware of R.B.'s behavior toward H.B. until her son reported it to his therapist. M.M. complained that H.B. would not tell her anything and abruptly terminated the meeting.

4

The social worker then interviewed M.M.'s boyfriend H.O., who was also present. He and M.M. had been together for five years. H.O. said he no longer allowed D.M. to visit R.B.'s home because of the sexual abuse. H.O. and M.M. had only recently learned of H.B.'s abuse. R.B. had asked H.B. to keep the abuse a secret.

Later that day, M.M. told the social worker she had nothing against R.B., did not believe he was molesting H.B., and claimed what father and son did together was "play." M.M., however, was not happy that R.B. was still touching H.B. after she had told him to stop. M.M. said she was not protecting R.B. She simply believed he was "incapable of hurting" H.B.

On September 19, 2019, a police officer informed the Department that M.M. had filed a police report, but refused an officer's offer of assistance in obtaining a temporary restraining order. M.M. said she did not believe R.B. was hurting her son.

On September 24, 2019, the Department filed a petition under section 300, subdivisions (b)(1), (d) and (j) alleging R.B.'s behavior, and M.M.'s failure to protect the children, placed the children at risk. Specifically, as pertinent to this appeal, the Department alleged "on prior occasions" R.B. "sexually abused" D.M. "by touching and squeezing the child's penis," and in "September 2019 and "on prior occasion[s]" R.B. "sexually abused" H.B. "by touching the child's penis," and placed the children "at risk of serious physical harm" and "sexual abuse." The petition further alleged M.M. "knew of [R.B.'s] sexual abuse" of the children and failed to protect them by "allow[ing] R.B. to have unlimited access" to them, and placed the children "at risk of serious physical harm" and "sexual abuse." The juvenile court detained H.B. from R.B. and released both children to M.M.

5

In follow-up interviews in October 2019, M.M. said she believed her sons' accounts. Years ago, when D.M described R.B.'s behavior, she demanded that he stop grabbing D.M.'s private parts because the child "didn't like it." R.B. replied it was "a game" played in Peru (where R.B. was born) and there "was nothing weird about it." M.M. had also seen R.B. grab H.B.'s genitals over his pants on at least one occasion. She had told R.B. to stop. M.M. again stressed she was unaware of R.B.'s ongoing behavior because H.B. never complained about it to her.

At the time, M.M. was participating in wraparound services and working with a parent partner to improve communication with H.B. The parent partner reported M.M. seemed averse to dealing with the effects of R.B.'s behavior and it was unclear whether M.M. truly believed her children had been sexually abused by him.

For his part, R.B. again denied the sexual abuse allegations. He said, "[H.B.] has bathroom problems, he doesn't clean himself well, I'll touch him around his private area over his pants to make sure that he's not wet. I've never touched [R.B.] or [D.M.]'s penis ever." R.B. blamed H.B.'s therapist for misconstruing his efforts to discover whether H.B. had soiled himself as molestation.

## B.    The Juvenile Court Issues Its Findings and Disposition Orders

The juvenile court sustained the petition and declared D.M. and H.B. dependents of the court under section 300, subdivisions (b), (d) and (j). The court ordered the children placed with M.M., removed H.B. from R.B.'s physical custody, and ordered that R.B.'s visitation be monitored by someone other than M.M. The

court ordered case plans for both parents and required R.B. to complete sexual abuse awareness counseling for perpetrators, to which he objected.

R.B. and M.M. timely filed separate notices of appeal.

## DISCUSSION

## I.      R.B.'s Appeal
## A.      Substantial Evidence Supported the Juvenile Court's Jurisdictional Findings of H.B.'s Sexual Abuse

The juvenile court found R.B. sexually abused D.M. and H.B., and placed them at substantial risk of serious physical harm and sexual abuse within the meaning of section 300, subdivisions (b)(1), (d) and (j). Although we need only consider the evidentiary support for one of the grounds (*In re I.J.* (2013) 56 Cal.4th 766, 773-774 (*I.J.*)), common to all three is the court's finding that R.B. sexually abused the children. R.B. challenges the sufficiency of the evidence to support these findings solely concerning H.B. We conclude there was substantial evidence H.B. was sexually abused and at substantial risk of future sexual abuse pursuant to section 300, subdivision (d).

### 1.      Applicable Law and Standard of Review

"The Department has the burden of proving by a preponderance of the evidence that . . . children are dependents of the court under section 300. [Citation.]" (*I.J., supra,* 56 Cal.4th at p. 773; see § 355, subd. (a).) Pursuant to section 300, subdivision (d), juvenile court jurisdiction is proper where "[t]he child has been sexually abused, or there is a substantial risk that the child

will be sexually abused, as defined in Section 11165.1 of the Penal Code, by his or her parent[.]"

Penal Code section 11165.1, subdivision (a) states "'sexual abuse' means sexual assault," which includes "conduct in violation of . . . [Penal Code] [s]ection 647.6 (child molestation)."[3] Penal Code section 11165.1, subdivision (b)(4) describes other types of conduct that qualify as "sexual assault," such as "[t]he intentional touching of the genitals or intimate parts, including the . . . genital area, groin, inner thighs . . . or the clothing covering them, of a child . . . for purposes of sexual arousal or gratification, except that it does not include acts which may reasonably be construed to be normal caretaker responsibilities; interactions with, or demonstrations of affection for, the child; or acts performed for a valid medical purpose." (See *In re R.C.* (2011) 196 Cal.App.4th 741, 748-749, fn. 7.)

"[S]ection 300 does not require that a child actually be abused or neglected before the juvenile court can assume jurisdiction . . . . The legislatively declared purpose . . . 'is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused . . . and to ensure the safety, protection, and physical and emotional well-being of children *who are at risk of that harm*.' [Citation.]" (*I.J.*, *supra*, 56 Cal.4th at p. 773; see *In re R.V.* (2012) 208

---

3    A violation of Penal Code section 647.6, subdivision (a) is a misdemeanor offense, which punishes "[e]very person who annoys or molests any child under 18 years of age." (Pen. Code § 647.6, subd. (a)(1).) For the statute to apply, there must be "(1) conduct a "'normal person would unhesitatingly be irritated by'" [citations] and (2) conduct "'motivated by an unnatural or abnormal sexual interest'" in the victim [Citations]." (*People Lopez* (1998) 19 Cal.4th 282, 289.)

Cal.App.4th 837, 843 [juvenile court "need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child. [Citations.]"].)

"'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] . . . ' [Citation.]" (*I.J., supra*, 56 Cal.4th at p. 773; see *In re S.C.* (2006) 138 Cal.App.4th 396, 408 ["The juvenile court's judgment is presumed to be correct, and it is appellant's burden to affirmatively show error. [Citation.]"].)

### 2. Substantial Evidence Supported the Finding That R.B. Sexually Abused H.B.

R.B. argues his behavior toward H.B. "seemed silly and childish," but there was no showing that he acted "for purposes of sexual arousal or gratification" within the meaning of Penal Code section 11165.1. R.B. points to evidence that he was merely "teasing" or "playing a game" with D.M. and H.B. and grabbed them quickly. Moreover, he argues, no pornography was involved nor any indication that R.B. attempted to enter the children's bedroom at night or acted inappropriately toward them in the bathroom. In short, R.B. is claiming he should not be faulted for behavior that could have been worse. We disagree.

"'Because intent can seldom be proved by direct evidence, it may be inferred from the circumstances. [Citation.]' [Citation.]"

9

(*People v. Mullens* (2004) 119 Cal.App.4th 648, 662.) "[T]he 'circumstances' which bear on the 'sexual' nature of the encounter are those facts which indicate that the actor touched the child in order to obtain sexual gratification." (*People v. Martinez* (1995) 11 Cal.4th 434, 450, fn. 16.) Circumstances considered in determining whether an act was performed with the requisite intent include such factors as the act itself, the relationship of the parties, whether secrecy was associated with the conduct, and "the presence or absence of any nonsexual purpose." (*Id.* at pp. 445, 450, fn. 16.)

Not only is R.B.'s argument an invitation for us to reweigh the evidence before the juvenile court, which we cannot do (*In re Jordan R.* (2012) 205 Cal.App.4th 111, 135), it ignores circumstances indicating he acted for purposes of sexual arousal or gratification. A parent may have occasion to touch the genitals of a young child in the context of routine hygiene; hence the explicit exclusion in Penal Code section 11165.1, subdivision (b)(4) for "acts which may reasonably be construed to be normal caretaker responsibilities."[4] Perhaps a father may deem it necessary to touch the crotch area of his young son's pants to determine whether the child had soiled himself. It is difficult, however, to reconcile H.B.'s description of R.B.'s conduct as "squeezing" or "pinching" his penis "real hard" with a normal parental check for proper hygiene. Putting aside that H.B., at eight and nine years old, presumably knew whether he had urinated or defecated on himself and could so inform his father when asked, a parental check for hygiene would not involve

---

4  Although R.B. characterizes his behavior as silly and playful, he does not contend it falls within the exclusion as a "demonstration[] of affection." (Pen. Code, § 11165.1, subd. (b)(4).)

squeezing or pinching the child's penis until he screamed in pain and said a certain word.

H.B., himself, made this distinction in acknowledging to the social worker that it was not normal for a man "to touch [H.B.'s] private parts," and no one should be allowed to touch them. H.B. also protested the touching when it happened, asking his father to stop. But, as H.B. told the social worker, R.B. "[did] it anyways."

Even in the absence of independent evidence of intent, R.B.'s described conduct was peculiar, inconsistent with any identifiably innocent purpose and sufficient to establish his intent to achieve sexual arousal. Indeed, on the facts presented, no purpose other than sexual gratification seems reasonable.

### 3. Substantial Evidence Supported the Finding That H.B. Was at Risk of Future Sexual Abuse

R.B. engaged in sexual abuse over a period of time with both D.M. and H.B. He either minimized his behavior to M.M. or denied it had occurred to the Department. There was evidence he had also asked H.B. to keep the abuse a secret. R.B. never expressed regret, nor underwent counseling, nor showed an intent to change his behavior. R.B. suggests the "games" he played with the children demonstrated an age proclivity, having not touched 13-year-old D.M. in several years. (See *In re Nicholas* (2001) 88 Cal.App.4th 1126, 1134 [evidence of prior conduct may be probative of current conditions, but standing alone does not establish substantial risk of harm; there must be reason to believe harmful conduct will continue]; see also *In re J.O.* (2009) 178 Cal.App.4th 139, 152.) However, the facts suggest that nine-

year-old H.B. would continue to be a target of his father's sexual abuse.

**B.    The Disposition Order Removing H.B. from R.B.'s Custody Was Proper and Supported by Substantial Evidence**

**1.    R.B. Forfeited His Challenges to the Removal Order**

R.B. challenges the order removing H.B. from his physical custody on several grounds. He contends the juvenile court applied the wrong statute and failed to base its ruling on the applicable standard of proof and to make the requisite findings to support the ruling. His only objection at the disposition hearing, however, was to the order that he participate in sexual abuse awareness counseling for predators as part of the case plan. By not objecting on the grounds he now raises on appeal, R.B. has forfeited his claims. (See *In re S.B.* (2004) 32 Cal.4th 1287, 1293 ["a reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court[,] [citation]" and "[d]ependency matters are not exempt from this rule. [Citations.]"]; *In re Ricky T.* (2013) 214 Cal.App.4th 515, 522; [failure to object at jurisdiction hearing forfeited issue on appeal]; *In re A.E.* (2008) 168 Cal.App.4th 1, 5 ["[t]he lack of an objection forfeited the point that father is raising on appeal"]; *In re Kevin S.* (1996) 41 Cal.App.4th 882, 886 ["It would be unfair to the trial court and the [Department] to consider this issue for the first time on appeal. [Citations.]"].)

12

### 2. The Removal Order Was Proper

Even in the absence of forfeiture, R.B. did not carry his burden of demonstrating error. In issuing its removal order, the court stated, "Pursuant to Welfare and Institutions Code section 360.1, sub[division] (c), the court finds that return of [H.B.] to the physical custody of [R.B.] would create emotional – physical and emotional damage to this child. [¶] The father has not enrolled in programming. [¶] He denies the incidents, and so based on [H.B.]'s young age, return to his father at this time would be premature. [¶] [M.M.] shall retain physical custody of her son."

We agree with the Department that the reference to "section 360.1, subdivision (c)" in the reporter's transcript as authority for the removal order was a scrivener's error; section 360.1, subdivision (c) does not exist. The correct statute is section 361, subdivision (c), which, as relevant here, provides that a dependent child "shall not be taken from the physical custody of his or her parents . . . with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence of any of the following circumstances" including "(1) [t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody."[5] (§ 361, subd. (c)(1).)

---

5      Although the juvenile court and the parties appear to have relied on subdivision (c)(1) of section 361, subdivision (c)(4) would also have applied, which prohibits removal "unless the juvenile court finds clear and convincing evidence" that "(4) [t]he minor or a sibling of the minor has been sexually abused, or is deemed to

13

Nonetheless, R.B. maintains the record shows the juvenile court "was not relying upon section 361." He argues (1) the court's failure to refer to the clear and convincing evidence standard of proof, and (2) its repeated use of the word "return"— in deciding against "returning" H.B. to R.B's physical custody— rather than "remove"—as in "removing" H.B. from his father's custody— "was reminiscent of the standard language" used at status review hearings under section 366, which is governed by the preponderance of the evidence standard of proof. We are not persuaded.

Section 361, subdivision (c)(1) prohibits removing a child absent clear and convincing evidence "there is or would be a substantial danger to the child's physical health, safety, protection, or physical or emotional well-being of the minor if the minor were *returned* home." (emphasis added.) If anything, the juvenile court's use of the word "return" in the removal order conveys it was well aware of the correct statute. To be sure, the better practice is for the court to state on the record the clear and convincing standard of proof, when it applies. The court's failure to do so here, however, cannot be equated with using the wrong standard of proof. (See *In re Bernadette C.* (1982) 127 Cal.App.3d 618, 625 [where applicable standard of proof is new or unclear, articulation is required, but where it is "' . . . well settled, it is presumed that the trial judge applied the appropriate standard and no articulation is required. [Citation.]' [Citation.]"].)

---

be at substantial risk of being sexually abused, by a parent . . . and there are no reasonable means by which the minor can be protected from further sexual abuse or a substantial risk of sexual abuse without removing the minor from his or her parent . . . ."

14

Finally, R.B. faults the juvenile court for failing to make certain findings in its removal order. Section 361, subdivision (c)(1) requires the court to find "there are no reasonable means by which the minor's physical health can be protected without removing the minor." Additionally, the court must determine "whether reasonable efforts were made to prevent or to eliminate the need for removal of the minor from his or her home" and "shall state the facts on which the decision to remove the minor is based." (§ 361, subd. (e).)

"In determining whether a child may be safely maintained in the parent's physical custody, the juvenile court may consider the parent's past conduct and current circumstances and the parent's response to the conditions that gave rise to juvenile court intervention. [Citation.]" (*In re D.B.* (2018) 26 Cal.App.5th 320, 332; (*D.B.*) accord, *In re Alexzander C.* (2017) 18 Cal.App.5th 438, 451 (*Alexander C.*). overruled on another point by *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011, fn.4) "'A removal order is proper if based on proof of parental inability to provide proper care for the child and proof of potential detriment to the child if he or she remains with the parent. [Citation.] "The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is averting harm to the child." [Citation.]" . . . ' [Citation.]" (*Alexzander C.*, *supra*, 18 Cal.App.5th at p. 451; accord, *D.B.*, *supra*, 26 Cal.App.5th at p. 328.)

Here, too, it would have been preferable for the juvenile court to have made a clearer statement on the record—this time, setting forth its findings in the context of section 361, subdivisions (c)(1) and (e). Nonetheless, the court's minute order and factual findings in its removal order—that R.B. denied the

15

sexual abuse had occurred and had not enrolled in programming to date, and H.B.'s youth—supported the child's removal from his father's physical custody within the meaning of section 361, subdivision (c).

### 3. Substantial Evidence Supported the Removal Order

R.B. alternatively argues the removal order was not supported by substantial evidence. R.B. contends his behavior toward H.B. was not sexual abuse, both he and M.M. are gainfully employed, and H.B. is healthy, well-adjusted, and wants to continue visiting his father. R.B. asserts the removal order itself demonstrated that the juvenile court, like the Department, "seemed unsure about the family's situation" and thus wanted R.B. "to prove himself through services."

A disposition order removing a child from a parent is reviewed for substantial evidence. (*In re Ashly F.* (2014) 225 Cal.App.4th 803, 809.). In this case, substantial evidence supported the juvenile court's decision, based on clear and convincing evidence, to remove H.B. from R.B.'s physical custody. (See *Conservatorship of O.B., supra,* 9 Cal.5th at p. 1005.) M.M. and R.B. were no longer residing together; H.B. lived with his mother and visited R.B. The court found H.B. was sexually abused by R.B. during visits at his father's home. At such a young age, H.B. was unable to stave off the abuse. Although R.B. had expressed a willingness to participate in any court-ordered program, at the time of the disposition hearing, he had not yet received the much-needed counseling to help him stop his harmful conduct. As the court found, "a return to his father at this time would be premature." Substantial evidence supported

the court's determination there were no reasonable means by which H.B. could be shielded from R.B.'s sexual abuse without removal.

II.     **M.M.'s Appeal**

A.      **Substantial Evidence Supported the Juvenile Court's Jurisdictional Findings of M.M.'s Failure to Protect Her Children**

At the jurisdiction hearing, M.M. asked the juvenile court to dismiss the dependency petition or, alternatively, to strike her from the allegations. Without comment, the court denied her requests and sustained the petition as alleged. M.M. contends, joined by R.B., substantial evidence failed to support the findings that she placed her children at risk by failing to protect them from R.B.'s sexual abuse.

1.      **Applicable Law and Standard of Review**

Under section 300, subdivision (d) a parent's failure to protect a child comes into play "when the parent . . . knew or reasonably should have known that the child was in danger of sexual abuse." M.M. argues she neither failed to protect her children from past sexual abuse nor placed them at risk of future sexual abuse, because "she believed the touching took place, reported [the] molestation to the police, was cooperative with [the Department] and engaged in wraparound services prior to the jurisdiction hearing."

As stated, the Department must prove by a preponderance of the evidence that D.M. and H.B. are dependents of the juvenile court under section 300. (*I.J., supra,* 56 Cal.4th 766, 773.) And, our review of the jurisdiction order is limited to determining

17

whether substantial evidence supported the juvenile court's finding, by a preponderance of the evidence, that M.M. failed to protect her children. (*Ibid.*)

## 2. Substantial Evidence Supported the Findings That M.M. Failed To Protect Her Children From Sexual Abuse and Future Risk of Sexual Abuse

M.M. never wholeheartedly accepted the truth that R.B. had sexually abused her children. After D.M. told her about R.B.'s behavior and she saw him grab H.B.'s penis, M.M. simply demanded that R.B. stop, because the children did not like it, not because R.B. was engaging in sexual abuse. M.M. did not intervene to stop the children from visiting R.B.'s home or otherwise restrict their contact with him. Nor did she inquire of her children whether R.B. was continuing to abuse them. When M.M. learned H.B. was still being subjected to R.B.'s abuse, she blamed her son for not confiding in her. M.M. never expressed anger or concern over R.B.'s sexually inappropriate conduct. Even after the Department became involved, M.M. seemed untroubled by R.B.'s harmful conduct and appeared to be attempting to exonerate him. She resisted filing a police report and did not seek a restraining order. M.M. said she had nothing against R.B. and he would never harm the children. M.M. never directly acknowledged that R.B. had sexually abused her children and, as late as two weeks before the jurisdiction hearing, she was still ambivalent about the nature of R.B.'s behavior.

The juvenile court could reasonably have concluded that despite M.M.'s claim to have believed her children's accounts, she never credited them as allegations of sexual abuse. If M.M. could not acknowledge what R.B. had done, that failure of insight

18

significantly increased the risk that she might fail to protect the children from similar conduct by R.B. (See *I.J., supra,* 56 Cal.4th at pp. 778-780.) There was substantial evidence that if the court had not exercised jurisdiction over the children, M.M. would fail to protect them from the risk posed by R.B.

## DISPOSITION

The orders under review are affirmed.

CURREY, J.

We concur:

MANELLA, P.J.

WILLHITE, J.